683 A.2d 643

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Cecilio MESA, Appellant.**

Superior Court of Pennsylvania.

Submitted June 17, 1996.

Filed Aug. 23, 1996.

148

Thomas Sundmaker, Public Defender, Stroudsburg, for appellant.

James P. Gregor, District Attorney, Stroudsburg, for Commonwealth, appellee.

Before KELLY, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Monroe County on December 21, 1995, following appellant's convictions on four counts of possession of a controlled substance, four counts of possession of a controlled substance with intent to deliver and one count of possession of drug paraphernalia. Herein, appellant contends that the lower court erred in denying his Pre–Trial Motion to Suppress. Appellant maintains that all evidence seized from his person and his residence should be suppressed because: 1) The permissible scope of the *Terry* search was exceeded when the police reached into appellant's pocket to investigate a bulge; and 2) The unlawful search of appellant's pocket was the basis for the subsequent search of appellant's person and his residence.

Upon review, we find that the lower court erred in denying appellant's motion to suppress. Absent the officer's testimony that he felt a weapon or *identifiable* contraband, there was no probable cause to justify the intrusive search into appellant's pocket. Since the search of appellant's pocket was illegal, the subsequent strip search of his person and the search of his residence were also illegal. Accordingly, we reverse the judgment of sentence and remand for a new trial.

The scope of appellate review of a trial court's denial of a motion to suppress is well established. This court must consider whether the record supports the suppression court's factual findings and the legal conclusions drawn therefrom by

reviewing the prosecution's evidence and only so much of the defense's evidence as remains uncontradicted within the context of the record as a whole. *Commonwealth v. Stackfield,* 438 Pa.Super. 88, 651 A.2d 558, 559 (1994); *Commonwealth v. Brundidge,* 533 Pa. 167, 620 A.2d 1115, 1116 (1993); *Commonwealth v. Burnside,* 425 Pa.Super. 425, 625 A.2d 678, 680 (1993). If the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous. *Stackfield,* 438 Pa.Super. 88, 651 A.2d at 559, quoting *Commonwealth v. Fromal,* 392 Pa.Super. 100, 572 A.2d 711, 717 (1990), *appeal denied,* 527 Pa. 629, 592 A.2d 1297 (1990).

The facts, as found by the trial court and supported by the record, are as follows: On March 25, 1995, Detective Lamberton and Officer Lewis, both of the Pocono Mountain Regional Police Department, were on patrol in an unmarked police car when they observed a white Camaro make a quick "evasive-style" U-turn from in front of a black Chevrolet Beretta. The Beretta then pulled out and traveled in the opposite direction on Route 611 at what the officers considered to be a high rate of speed. The officers followed the Beretta to investigate the situation between the Beretta and the Camaro. When the Beretta started to pass vehicles on both sides of the road by weaving in and out of traffic, the officers stopped the vehicle.

According to Detective Lamberton's testimony, when stopped, appellant was moving around "a lot" in the passenger seat. The officers then placed Veronica Bach, the driver of the Beretta, in the back of the police car and attempted to speak to appellant, but appellant did not understand English. Detective Lamberton motioned for appellant to step out of the Beretta, and, after appellant complied, Lamberton conducted a pat-down search. In appellant's left-hand pants pocket Lamberton felt a bulge, and he immediately reached into the pocket and pulled out a large amount of cash folded in half. The cash totaled $731.00, and consisted of $20's, $10's, $5's, and singles. Wrapped up inside of the cash was a two inch by two inch baggie which contained a small amount of marijuana.

At the suppression hearing, Detective Lamberton testified that he conducted a pat-down search because appellant's movement in the Beretta made him suspect that appellant was concealing something, and the original pat-down was conducted for his safety. However, Lamberton also testified that the bulge did not feel like a weapon, but its "shape and form" caused him to think the bulge contained a controlled substance.

Following the search of appellant, the officers performed a consensual search of the Beretta, and no illegal substances were found. Appellant was placed under arrest and brought to the Pocono Mountain Regional Police Station where he was subjected to a strip search which produced a quantity of cocaine. Appellant was charged with possession of a controlled substance and possession of a controlled substance with intent to deliver. Veronica Bach was interviewed and consented to a police search of the apartment which she shared with appellant. The police search resulted in the seizure of two (2) marijuana roaches, a pipe used for the ingestion of marijuana, two (2) digital scales, four (4) plastic bags, two (2) packs of rolling papers, a quantity of money and a quantity of marijuana and cocaine. Appellant was charged with possession of a controlled substance, possession of drug paraphernalia and possession of a controlled substance with intent to deliver. No charges in this matter were filed against Bach.

■■■ We address first the issue of whether the pat-down search of appellant was permissible. Subject to certain exceptions, warrantless searches are presumed unreasonable. *Commonwealth v. Lindsay*, 406 Pa.Super. 638, 595 A.2d 86, 88 (1991), *appeal denied*, 529 Pa. 647, 602 A.2d 857 (1991). One such exception was adopted by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969). In *Terry*, the Court granted authority to police officers to pat-down or frisk an individual for weapons based upon the reasonable belief that criminal activity is afoot, and that the suspect may be armed and dangerous. *Commonwealth v. Canning*, 402 Pa.Super. 438, 587 A.2d 330, 331 (1991) (citing *Terry, supra* 392 U.S. at 27, 88 S.Ct. at 1883, 20

L.Ed.2d 889). Good faith on the part of the police officer is insufficient to justify such a search. Rather, the officer must be able to point to specific facts. *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342, 343 (1970); *Commonwealth v. Pine,* 370 Pa.Super. 410, 536 A.2d 811, 814 (1988).

■ At the suppression hearing, Detective Lamberton set forth the specific facts that led him to conclude that appellant might be armed and dangerous.[1] Lamberton testified that as he was approaching the Beretta, appellant was moving around a great deal and this led him to believe that appellant could be armed and dangerous and was attempting to conceal something. In *Commonwealth v. Morris,* 422 Pa.Super. 343, 619 A.2d 709 (1992), *appeal denied,* 534 Pa. 654, 627 A.2d 731 (1992), this court held that when a police officer observed the appellant's furtive movements in stuffing a brown bag under the front seat of his vehicle, the subsequent search of his person was justified under *Terry. Morris, Id.,* 619 A.2d at 712. Since the appellant's actions in *Morris* supported the officer's belief that his safety was in jeopardy and, at the very least, articulable suspicion that the bag contained "contraband or a dangerous weapon", *Id.,* 619 A.2d at 712–13, we found that the officer was entitled to search the appellant and the appellant's vehicle for his own protection. *Id.* The present case is similar to *Morris,* and we find that Detective Lamberton had "articulable" suspicion that appellant might be armed and dangerous, warranting a *Terry* search for his protection.

■ We analyze now whether Detective Lamberton exceeded the lawful scope of the *Terry* search. The scope of a *Terry* search is very limited, and "it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of a police officer." *Commonwealth v. Canning, supra,* 587 A.2d at 331 (citing *Terry, supra* ). Recently, however, the United States Supreme Court expanded the scope of a *Terry* search by adopting the "plain feel" exception to the warrant require-

1. Appellant does not expressly challenge the propriety of the initial traffic stop of the Beretta.

ment. In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct 2130, 124 L.Ed.2d 334 (1993), the Court reasoned that the plain view doctrine:

> has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search.... If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*In Interest of S.D.*, 429 Pa.Super. 576, 633 A.2d 172, 175–76 (1993) (quoting *Dickerson*, 508 U.S. 366, 113 S.Ct. at 2137, 124 L.Ed.2d 334).

Since *Dickerson*, this court has had numerous opportunities to define the applicability of the "plain feel" exception. In *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993), this court held that "[w]here it is 'immediately apparent' from the tactile impression that the suspect possesses contraband on his person, a seizure of the contraband is justified." *Id.*, 631 A.2d at 1340 (citing *Minnesota v. Dickerson, supra*). In *Johnson*, we held that the "plain feel" exception applied because the officer testified that his tactile impression of a bag of cocaine secreted in the appellant's crotch led him to believe immediately that what he felt was a controlled substance. *Id.*, 631 A.2d at 1340–41. It was this court's opinion that the "perceived consistency and location of the package together with the surrounding circumstances combined sufficiently to betray the illegal nature of the object on appellee's person." *Id.* The identity of the cocaine became immediately apparent with only a "minimally intrusive" pat-down. *Id.*

This court interpreted the "plain feel" exception when we reversed a denial of a motion to suppress in *Interest of S.D., supra,* finding that there was insufficient evidence to sustain an intrusive search into the defendant's pocket to seize fifty

vials of cocaine felt during a pat-down. In *Interest of S.D.*, the officer testified at the suppression hearing that he "felt a bulge in [S.D.'s] right pants pocket" during the pat-down search. *Id.*, 633 A.2d at 176. However, the officer never testified what he perceived he had felt. *Id.* We determined that "in the absence of testimony that the officer felt a possible weapon or that he 'recognized the vials as contraband,' the facts did not justify the intrusion into the defendant's pockets." *Commonwealth v. Stackfield, supra* (citing *Interest of S.D., supra*). Since the officer was unable to substantiate what he thought he felt during the pat-down, we could not conclude that the officer thought the bulge was either a weapon or identifiable contraband. Thus, the search exceeded the scope permissible under *Terry*, and the evidence was suppressed. *Interest of S.D., supra.*

Similarly, in *Commonwealth v. Lateef*, 446 Pa.Super. 640, 667 A.2d 1158 (1995), we found that a police officer exceeded the scope of a *Terry* search by reaching into the appellant's pants pocket. The officer in *Lateef* testified that he conducted a pat-down search of appellant "for his safety" and felt a bulge in the appellant's pocket. However, the officer was unable to recall what he perceived he had felt. *Id.*, 667 A.2d at 1162. The officer then reached into the appellant's pockets and retrieved various amounts of currency and a small plastic baggie containing a controlled substance. Consequently, this court ruled that this intrusive search of the appellant was illegal and that the fruits that arose therefrom must be suppressed. *Id.*

Further, in *Commonwealth v. Stackfield, supra*, we held that a police officer's detection of zip-lock baggies containing controlled substances in the appellant's pocket during a *Terry* search did not provide probable cause to justify a search of the defendant's pocket, absent facts in the record to support the officer's contention that what he was feeling was either contraband or a weapon. Under the record presented in *Stackfield*, we found that the facts did not support the conclusion that the officer felt an item that he immediately recognized as contraband. *Id.*, 651 A.2d at 562. The officer testified that:

When I had patted down his pockets I had felt some—what I knew was packaging material or zip-lock baggies, what it felt like from my experience from working drugs. I subsequently did reach in and pulled out numerous baggies that had been in his pants pockets. I believe front and back. Some of them had marijuana.

*Id.*, 651 A.2d at 560. We noted that probable cause to conduct the more intrusive search through the appellant's pockets did not arise because, "[a] zip-lock baggie is not per se contraband, although material contained in a zip-lock baggie may well be.... Sight unseen, the contents of the baggies ... could as easily have contained the remains of appellant's lunch as contraband." *Id,* 651 A.2d at 562. The record reflected that only after the officer reached in and seized the baggies from the appellant's pockets, could the contents of the baggies be identified by sight as a green, leafy material which subsequently field-tested positive for marijuana. *Id.* Thus, since the officer was unable to know by feel what was in the zip-lock baggies, "the legal conclusion that sufficient probable cause existed to justify a more intrusive search is in error." *Id.*

■ Applying current Pennsylvania law to the case before this court, we find that Officer Lamberton exceeded his lawful authority by reaching into appellant's pocket during the *Terry* frisk. Officer Lamberton's relevant testimony at the suppression hearing was as follows:

Q: When you were doing the pat-down and you came upon the bulge in the defendant's pocket, what observations did you make of that bulge?

A: I made no observations that time until I reached into his pocket and pulled out what was in there.

Q: Was there any reason why you reached in the pocket and pulled out what was in there?

\* \* \* \* \* \*

A: —I felt that the bulge may contain a controlled substance.

Q: What was it about the bulge that caused you to think it contained a controlled substance?

A: Just the shape and form it was in.

Q: Was that something that was immediate to you during the pat-down?

A: Yes.

N.T. 9–10.

Later, on cross-examination, Lamberton stated:

Q: The bulge was soft, was it not?

A: Uh-huh.

*       *       *       *       *       *

Q: You knew it was not a weapon?

A: Correct.

*       *       *       *       *       *

Q: When you pulled out the money, could you see the marijuana at that time?

A: Yes.

Q: It was sticking out?

A: The money was folded in half over the marijuana and the money flopped open like folded bills do, and there is a bag of marijuana.

N.T. 27–28.

We find that the above testimony does not support the factual conclusion that Detective Lamberton felt an item that was "immediately recognizable" as a controlled substance. Although Lamberton testified that he recognized that the bulge was a "controlled substance", he also stated that he made no observations of the bulge "until [he] reached into [appellant's] pocket and pulled out what was in there." See, N.T., *supra*. A close reading of the record does not support the factual finding that Detective Lamberton recognized an object whose "contour or mass [made] its identity immediately apparent", *Dickerson, supra; Interest of S.D., supra; Stackfield, supra,* especially when we consider the size and shape of the folded money and packet of marijuana.

In *Interest of S.D.* and *Lateef,* this court ruled that when contraband is retrieved from a suspect's pocket during a *Terry*

search and the officer is unable to give specific testimony regarding how the contraband felt, the contraband must be suppressed.  The facts of the present case are similar to those presented in *Interest of S.D.* and *Lateef.*  In the present case, Detective Lamberton gave general testimony that the bulge felt like a controlled substance, but he never provided specific testimony as to why the "shape and form" of the bulge warranted an intrusive search into appellant's pocket.  Without additional testimony, we do not find that the surrounding circumstances "betray[ed] the illegal nature of the object on [appellant's] person." *Johnson, supra.*

▮ Applying *Stackfield,* it is difficult for us to perceive how a large amount of currency, in and of itself, and sight unseen, could have a "contour or mass" that was immediately recognizable as a controlled substance.  In *Stackfield,* we held that a zip-lock baggie detected during a *Terry* search was not "per se contraband" that would justify a subsequent search of the appellant's pockets.  *Stackfield, supra.*  Finding that the baggie itself was not contraband, we held that the officer lacked probable cause to search the appellant's pockets.  *Id.* Similarly, we find that Detective Lamberton also lacked probable cause to search appellant's pocket.  Assuming Detective Lamberton recognized the bulge as a large amount of cash, this court finds that a large amount of cash, in and of itself, is not "per se contraband".  See, *Stackfield, supra.*  Sight unseen, the money could have easily been appellant's wages or tips received for honest labor.

Additionally, the record discloses that it was only after Detective Lamberton removed the contents of appellant's pocket that the contents of the two inch by two inch baggie were identified as marijuana.  Since Lamberton testified that he did not identify the contents of the bulge until after he removed it from appellant's pocket, its identity did not become "immediately apparent with a minimally intrusive pat-down" Compare, *Johnson, supra* (bag of cocaine concealed in defendant's crotch was properly seized as recognizable contraband because of the location and consistency of the object).  We, therefore, find that his intrusive search of appellant's pocket

158

under the "plain feel" exception was not warranted, and the evidence obtained therefrom must be suppressed.

■ Finally, applying the principles of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), we find that the evidence obtained from appellant's person and apartment must be suppressed. In *Wong Sun,* the United States Supreme Court found that the question to be resolved is " ... 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality....' Maguire, *Evidence of Guilt,* 221 (1959)." *Wong Sun,* 371 U.S. 471, 83 S.Ct. 407, 417, 9 L.Ed.2d 441. Our supreme court has repeatedly held that where evidence obtained from an unlawful search of a defendant's person was inadmissible, the evidence obtained from a subsequent search of the defendant's apartment was equally inadmissible. *Commonwealth v. Reece,* 437 Pa. 422, 263 A.2d 463 (1970) (citing *Wong Sun v. United States, supra* ); *See also, Commonwealth v. Knowles,* 459 Pa. 70, 327 A.2d 19 (1974) (evidence obtained from search of residence was inadmissible when it was the fruit of a primary illegality).

Since the initial search of appellant's pocket was illegal, we find that all evidence collected subsequently was acquired through the exploitation of the initial search. Consequently, all evidence discovered during the strip search of appellant's person and the search of his residence must be suppressed as the "fruit of the poisonous tree." *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993) (citing *Wong Sun, supra* ).

Judgement of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.