J-S18002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT SAUNDERS, | |
| Appellant | No. 1602 EDA 2013 |

Appeal from the Judgment of Sentence Entered May 14, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009749-2012

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 01, 2015**

Appellant, Robert Saunders, appeals from the judgment of sentence of 6-12 months' incarceration following his conviction for possession of, and possession with intent to deliver (PWID), marijuana.  In this appeal, Appellant challenges the weight and sufficiency of the evidence supporting his conviction, and he also claims that the trial court erred when it denied his suppression motion.  After careful review, we reverse.

The trial court summarized the events leading to Appellant's conviction as follows:

> On February 2, 2012, at around 1:50 p.m., Highway Patrol Officer Joseph Wolk and his partner[,] Officer George Soto[,] were on routine patrol of the 2700 block of North 26th Street in the City and County of Philadelphia.  Officer Wolk testified that this was a high crime and violence area with a number of shootings.  Both officers were in full uniform and driving a marked highway patrol vehicle westbound on Lehigh Avenue approaching 26th Street.  Officer Wolk testified that upon

reaching the middle of the 2500 block of West Lehigh Avenue he noticed a tan 2001 Lincoln Navigator driving in reverse and proceeding northbound against the one-way direction of North 26th Street. Officer Wolk observed the vehicle back through a red signal [and] proceed onto the 2700 block of 26th Street. Officer Wolk followed the vehicle onto 26th Street. He then pulled directly in front of the vehicle, and followed it as it reversed, coming almost bumper to bumper with it. Officer Wolk observed [Appellant], operate the vehicle alone with his head turned to the rear and one hand on the steering wheel. When [Appellant] stopped the car, he finally faced forward and saw the officers. The officers then stopped and exited their patrol car.

Officer Wolk approached the passenger side of the vehicle while Officer Soto approached the driver's side door. Officer Soto spoke to [Appellant], and Officer Wolk observed [Appellant] from the passenger side but could not see the right side of [Appellant]'s body because it was blocked by the center console. Officer Wolk opened the passenger side door in order to ensure that there was nothing hidden next to [Appellant] which could threaten his or Officer Soto's safety. Officer Wolk immediately noticed two boxes of baking soda and a "Foot Locker"-type bag (*i.e.* plastic sneaker bag with a drawstring used to carry shoeboxes) approximately 16 inches high and 10 or 12 inches wide on the passenger seat. Officer Wolk saw that the sneaker bag was open, but he could not see into the bag from where he was standing outside the car. Officer Wolk leaned into the car and looked down into the bag, where he saw a large, clear heat-sealed bag containing marijuana.

Officer Wolk signaled to Officer Soto who had [Appellant] step out of the car. [Appellant] was handcuffed and placed in the back of the patrol car. [Appellant] and his vehicle were relocated to 25th and Lehigh Avenue because a crowd had been forming during the traffic stop. Officer Wolk searched the vehicle after the arrest and recovered "four small sandwich bags, all tied up with knots, all with green weedy substance inside of alleged marijuana." Officer Wolk also recovered $245 from [Appellant]'s pockets. The recovered money consisted of thirty-five $1 bills, six $5 bills, four $10 bills, and seven $20 bills. The vehicle [Appellant] was operating was owned and registered by him, and he was issued a traffic ticket for disregarding a red signal.

At trial, Officer Kevin Keyes testified as an expert witness for the Commonwealth. He testified that he has worked in narcotics for 19 years, has been a police officer for 24 years, and works or has worked throughout the entire city of Philadelphia. He testified that he is quite familiar with the location of the traffic stop and the surrounding area. Officer Keyes opined that the marijuana possessed by [Appellant] was consistent with that of a low-level distributor, and that it was possessed with the intent to deliver. He testified that the combined weight of the bulk marijuana found in the front seat and the smaller sandwich bags containing marijuana found in the center console was 219 grams — a little under half a pound. He estimated the value of the recovered marijuana to be "anywhere from $500-1500, depending on [its] quality and the THC level, which is the compound that produces the high in the cannabis plant." He also testified that the four individual small bags found in the center console weighed 1.2 grams each for a total of 4.8 grams, and constituted a "$40 investment." He testified that in his experience, "if an individual has access to bulk, they would not be purchasing small bags [of 1.2 grams each]," but would use that $40 to purchase a quarter of an ounce bag (approximately 7 grams). Officer Keyes testified that in his experience, when an individual has bulk bags and small bags, the intention is to break down the bulk into smaller bags for distribution. Furthermore, Officer Keyes testified that the denominations in which the money was recovered was "consistent with a distributor."

Frank Wallace testified as an expert witness for the Defense. It was his opinion that "there was no material evidence that would indicate that [Appellant] was anything other than a user, albeit a heavy user." He testified that he has extensive experience as an investigator, undercover agent, and supervisor in the narcotics squad, and has conducted very large narcotics surveillances or investigations with the DEA and with FBI agents. On cross-examination he testified he did not know the street value of a bag of marijuana in Philadelphia, and did not appear to have current knowledge of the denominations in which marijuana is sold locally.

Trial Court Opinion (TCO), 9/19/14, 1-4 (citations to the record omitted).

The trial court denied Appellant's suppression motion on January 23, 2013. He was tried non-jury on the same day, and ultimately convicted of

- 3 -

possession of marijuana, 35 P.S. § 780–113(a)(16), and PWID (marijuana), 35 P.S. § 780–113(a)(30). On May 14, 2013, the trial court sentenced Appellant to 6-12 months' incarceration and a consecutive term of 3 months' probation. Appellant filed a timely appeal on June 3, 2013, and a timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal on April 10, 2014. The trial court issued its Rule 1925(a) opinion on September 19, 2014.

Appellant now presents the following questions for our review:

1. Did the Court err by denying [A]ppellant's motion to suppress – based upon the Constitutions of the United States and the Commonwealth of Pennsylvania – the narcotics in the bag allegedly on the front seat; as the police did not have reasonable suspicion or probable cause to stop [A]ppellant nor were the police legally allowed to be where they were when they allegedly saw the narcotics in the bag thus the plain view doctrine does not apply?

2. Did the Court err by denying [A]ppellant's motion to suppress – based on the Constitutions of the United States and the Commonwealth of Pennsylvania – the narcotics that were secreted inside the console of the vehicle as [Appellant] was already in custody, under arrest and/or its functional equivalent and as such, a warrant would have been necessary to search the vehicle.

3. Was the evidence adduced at trial sufficient to sustain the conviction of Possession with Intent to Deliver a Controlled Substance as the evidence indicated it was just as likely that narcotics were possessed for personal use?

4. Was the verdict against the weight of the evidence as the [A]ppellant's expert provided evidence that was as credible as the expert called by the Commonwealth and no reasonable juror could find otherwise?

Appellant's Brief, at 11 (footnote omitted). In a footnote to his second issue, Appellant notes that he has abandoned that claim "in light of recent development in Pennsylvania case law." *Id.* at 11 n.1.

Appellant's first claim presents multiple challenges to the the denial of his suppression motion before the trial court.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

Although Appellant's statement of the first question presents multiple theories of relief, he now concedes "the stop was supported by probable cause to believe that [Appellant] violated" the Motor Vehicle Code. Appellant's Brief, at 19. Thus, Appellant's sole suppression-related legal claim is that the plain view doctrine did not apply because the police did not observe the seized contraband from a lawful vantage point. He also argues that one of the trial court's factual findings—that he had engaged in evasive behavior during the stop—lacked support in the record. We begin our analysis by resolving the factual issue as it is critical to the legal question before us.

In its treatment of Appellant's claim, the trial court states as follow:

In the present case, the Commonwealth provided specific facts by which to support a search of [Appellant]'s vehicle for officer safety. First, [Appellant] was driving dangerously, and had driven in reverse through a red light at an intersection. Furthermore, **[Appellant]** ***did not immediately stop his vehicle even after the officers had pulled in front of him to pull him over. Such behavior typifies evasiveness***, and provides additional grounds for the officers to develop a reasonable suspicion that further criminal activity is afoot. Finally, the area was known for being a high-crime location with many shootings.

TCO, at 7 (emphasis added). Appellant contends that the above-emphasized 'fact' is not supported by the record.

Initially, we note that the trial court's reliance on Appellant's purportedly evasive behavior, his failure to immediately stop when police began pursuit, is not accompanied by any citation to the record. ***Id.*** The matter was not even mentioned in the trial court's otherwise detailed factual summary. ***Id.*** at 2-5. Indeed, that more comprehensive factual summary suggests the opposite conclusion regarding Appellant's alleged evasiveness. It indicates that Appellant was not aware of the police following him because his head was turned to the rear of his vehicle while being followed. Additionally, when the trial court summarized its factual findings at the conclusion of the suppression hearing, it made no mention of Appellant's purported failure to promptly stop. N.T., 1/23/13, at 62-65. At that time, the court did not even once suggest that Appellant engaged in evasive behavior at any time during his encounter with the police. ***Id.***

- 6 -

Officer Wolk testified regarding what happened after he saw Appellant drive his car in reverse through an intersection, as follows:

> I then got in front of the vehicle, still reversing on 26th Street. I was directly in front of the vehicle. [Appellant] was operating the vehicle but he had his head turned to the rear of the vehicle backing up the street. As he turned around, [he] looked in my direction. I was in front of it. We exited the vehicle.

N.T., 1/23/13, at 11.

During the cross-examination of Officer Wolk, he was asked, "And we can agree based on – and I've asked you this four or five times in different ways but we can agree at the point in time that the car is stopped and your car is stopped, there's no exigency, meaning, you haven't seen anything that [Appellant] has engaged [in] that would raise your suspicions other than he had violated the traffic law, right?" *Id.* at 34-35. Officer Wolk responded, "That's correct." *Id.* at 35.

Thus, there appears to be no support in the record for the trial court's finding that Appellant engaged in evasive behavior. The Commonwealth scoffs at this conclusion, stating that "[t]he only thing unsupported by the record is [Appellant's] specious proposition." Commonwealth's Brief, at 14 n.2. The Commonwealth concedes Officer Wolk's observation that Appellant's "head was turned as he was backing dangerously in reverse down the one-way street[,]" but contends that "Officer Wolk did not-and could not-testify to what [Appellant] did or did not see prior to or during his reckless jaunt." *Id.* Thus, the Commonwealth argues, "[r]ecognizing this, the lower court properly made the following factual finding, which is entirely

supported by the record: '[Appellant] did not immediately stop his vehicle even after the officers had pulled in front of him,' [behavior which] "typifies evasiveness[.]'" *Id.* (quoting TCO, at 7).

The Commonwealth's argument is absurd on its face. It suggests that the factual foundation for the trial court's finding that Appellant engaged in evasive behavior somehow arises out of a complete lack of evidence concerning Appellant's evasiveness. Yet, there is not even any support in the record for the proposition that the police were following Appellant for any significant period of time, or that Appellant failed to immediately stop. Officer Wolk, the only witness to testify during the suppression hearing, did not once indicate that Appellant failed to immediately stop when Officer Wolk began to follow him. He only stated that Appellant stopped once Appellant had turned his head to face Officer Wolk's vehicle. Accordingly, we conclude that the record does not support the trial court's factual finding regarding Appellant's purported evasiveness.

We now turn to the legal question before us. We begin with a review of the plain view doctrine, upon which the trial court relied in denying Appellant's suppression motion. "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007). One such exception to the presumptive unreasonableness of a warrantless search or seizure is the "plain view doctrine." *Id.* An object may be seized by police

without a warrant if (1) the police observe the object from lawful vantage-point; (2) the incriminating character of the object is immediately apparent; and (3) the police have a lawful right of access to the object. *Id.* at 625.

Here, Appellant contends that Officer Wolk did not have the authority to conduct a protective search of his vehicle. This implicates both the first and third prong of the plain view doctrine. If Officer Wolk lacked the authority to conduct a protective sweep of Appellant's vehicle, then he did not have a lawful right of access to the seized marijuana. Relatedly, if Officer Wolk was not justified in conducting a protective sweep, which had enabled him to view the contraband, then the marijuana was not observed from a lawful vantage point.

The authority to conduct a warrantless "search of the passenger compartment of a vehicle for weapons" prior to an arrest is governed by *Michigan v. Long*, 463 U.S. 1032 (1983):

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Long*, 463 U.S. at 1049. *Long* represents an extension of the principles first announced in *Terry v. Ohio*, 392 U.S. 1 (1968). In *Terry*, the Supreme Court of the United States granted authority to police officers to pat-down or frisk an individual for weapons based upon the reasonable belief that the suspect may be armed and dangerous and/or that criminal activity is afoot.

In the present case, the trial court found that Officer's Wolk's breach of the threshold of Appellant's passenger-side door was justified under the *Long*/*Terry* standard for the following reasons:

> In the present case, the Commonwealth provided specific facts by which to support a search of the defendant's vehicle for officer safety. First, the defendant was driving dangerously, and had driven in reverse through a red light at an intersection. Furthermore, the defendant did not immediately stop his vehicle even after the officers had pulled in front of him to pull him over. Such behavior typifies evasiveness, and provides additional grounds for the officers to develop a reasonable suspicion that further criminal activity is afoot. Finally, the area was known for being a high-crime location with many shootings. When viewing these facts in their totality, the Court finds that the officers had reasonable suspicion not only that the defendant was engaged in criminal activity, but that the defendant may also have been in possession of a weapon in furtherance of that activity. Therefore, when the officers finally pulled the defendant over and noticed that the right side of the defendant's body was obscured from view by the center console, Officer Wolk was justified in opening the passenger side door to conduct an officer safety sweep for weapons.

TCO, at 7.

The trial court found that Officer Wolk possessed a reasonable suspicion that Appellant was armed and dangerous and may have been

concealing a weapon based on the following factors: 1) Appellant's motor vehicle code infraction; 2) Appellant's evasive behavior; and 3) Appellant's presence in a high-crime area. *Id.* As previously decided, the record does not support the trial court's finding that Appellant engaged in evasive behavior. However, the Commonwealth also argues that it is also relevant that Appellant's right hand was shielded from Officer Wolk's view. To a limited extent, we agree that the fact is relevant, insofar as it suggests the intended target of Officer Wolk's search as well as the permissible contours of any limited search to assuage the officer's fears. Thus, certainly, the fact that Appellant's hand was obscured from Officer Wolk's view is relevant to our analysis.

Additionally, however, the Commonwealth attempts to portray this fact as intentional and secretive behavior on Appellant's part, when it suggests that Appellant "shielded his right arm from Officer Wolk's view by keeping it behind the center console[.]" Appellant's Brief, at 15. Yet, there is nothing in the record supporting this characterization. If Officer Wolk had testified that he observed something to suggest intentionality, such as an unnatural hand position or furtive movements, then we could accept the Commonwealth's characterization as a reasonable inference deriving from the record. However, the Commonwealth has not pointed to any portion of Officer Wolk's testimony from which that characterization could be inferred. Indeed, the trial court did not even attempt to characterize this fact as an intentional act in its Rule 1925(a) opinion. *See* TCO, at 7 (stating that the

- 11 -

officers "noticed that the right side of [Appellant's] body was obscured from view by the center console"). In our own careful review of Officer Wolk's testimony, we have not discovered any testimony supporting the characterization that Appellant was intentionally trying to obscure his right hand from Officer Wolk's view.[1]

It is not a reasonable inference from the fact that Appellant's right hand was shielded from Officer Wolk's view that Appellant was trying to secrete anything. Indeed, this fact, or something quite similar, will likely be present during every traffic stop. Objects located under seats or near the occupants' feet will likewise be obscured from any officer standing alongside a passenger vehicle. The mere inability of an officer to observe every inch of an individual's body, or every area of the passenger compartment where a weapon might be secreted, does not, by itself, constitute "'specific and articulable fact[] which, taken together with the rational inferences from th[at] fact[], reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." **Long**, 463 U.S. at 1049. Thus, the legal question before us, properly framed by facts actually supported by the record, is whether the observation of a motor vehicle infraction in a high crime area reasonably warrants the belief that the

_____

[1] Whether Officer Wolk's partner, Officer Soto, was able to see Appellant's right hand from his vantage point on the driver's side of Appellant's vehicle is unresolved by the record. Officer Soto did not testify at the suppression hearing.

driver is armed and dangerous or engaged in criminal activity so as to justify a limited search for weapons.

While none of the following cases are directly on point, they are instructive. In **Commonwealth v. Mesa**, 683 A.2d 643 (1996), police stopped a car due to erratic and "evasive" driving. **Id.** at 645. When stopped, Mesa "was moving around 'a lot' in the passenger seat." **Id.** When the police officers attempted to speak to Mesa, they realized that he could not speak English. **Id.** The officers removed Mesa from the car, patted him down for weapons, and discovered marijuana and drug paraphernalia. **Id.** Addressing the permissibility of the pat-down, this Court relied on **Commonwealth v. Morris**, 619 A.2d 709 (Pa. Super. 1992), in holding that Mesa's furtive movements constituted an "'articulable' suspicion that [Mesa] might be armed and dangerous." **Mesa**, 683 A.2d at 646.

In **Morris**, the appellant was a passenger in a vehicle stopped for the driver's failure to use a turn signal. "When [the] [o]fficer … approached the stopped car he saw Morris stuffing a brown paper bag under the seat." **Morris**, 619 A.2d at 710. Morris was ordered out of the car, and police discovered drugs in the secreted bag. **Id.** This Court held that "the officer's actions … were justified after observing Morris's furtive movements in stuffing a brown bag under the front passenger seat of the vehicle." **Id.** at 712.

By contrast, in **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa. Super. 2013) (*en banc*), the Commonwealth appealed from the trial court's

- 13 -

granting of Cartagena's suppression motion. Cartagena was stopped at 1:50 a.m. for a tinted windows violation. He was asked to lower his window, but he did not respond until a second request was issued. When asked for his license and registration, he initially opened his center console, "looked inside 'like he was going to retrieve paperwork out of there[,] [ ... ] looked stunned and then closed it.'" *Id.* at 296. He then retrieved the documentation from his glove box. Officer Johncola testified that Appellant appeared extremely nervous during the encounter. He was tripping over his words and shaking. Based on these factors, Officer Johncola searched the passenger compartment of Cartagena's vehicle for weapons. Contraband, a firearm with an altered manufacturer's number, was discovered in the center console.

An *en banc* panel of this Court affirmed the trial court's granting of Cartagena's suppression motion because the police lacked reasonable suspicion that Cartegena was armed or dangerous:

> In contrast to the Commonwealth's recitation of the facts, our review of the record in this case reveals that it is significantly lacking in articulable facts that would allow us to reverse the suppression court's decision. The entirety of Officer Johncola's testimony comprises little more than six pages of transcript, with the direct examination conducted by the Commonwealth covering just over three pages. The suppression hearing transcript contains no information about Officer Johncola's level of training or experience in conducting traffic stops (or even years of service) and is devoid of any testimony that Officer Johncola believed, based on his training and experience, that Cartagena possessed a weapon or had access to a weapon in his vehicle. *See Terry*, 392 U.S. at 30–31[]; *Long*, 463 U.S. at 1049–50[]; *see also In re O.J.*, 958 A.2d [561,] 563 [(Pa.

- 14 -

Super. 2008)] (officer testifying that police "normally" conduct a protective weapons search of a vehicle where they observe furtive hand movements during a stop, as "that behavior creates a fear that a weapon may be located where the movements occurred."). There was also no testimony describing the neighborhood in which this stop occurred, *i.e.*, there is no testimony that it was a high-crime area; only that police stopped Cartagena in the 100 block of Lehigh Avenue in Philadelphia. Furthermore, there is no indication that Cartagena did not immediately stop for the police (***see In re O.J.***, 958 A.2d at 563); that the police saw any weapons in the vehicle prior to conducting [] the protective search (***see Long***, 463 U.S. at 1051, 103 S.Ct. 3469; ***Morris***, 537 Pa. at 419, 644 A.2d at 722; ***Commonwealth v. Rosa***, 734 A.2d 412, 413 (Pa.Super. 1999)); or that he made any movements that caused Officer Johncola to believe that Cartagena was in possession of a weapon or that Cartagena posed a safety threat (***see Commonwealth v. Foglia***, 979 A.2d 357, 359 (Pa. Super. 2009) (*en banc*); ***In re O.J.***, 958 A.2d at 563; ***Commonwealth v. Wilson,*** 927 A.2d 279, 284 (Pa. Super.2007); ***Commonwealth v. Boyd***, 17 A.3d 1274, 1276 (Pa. Super. 2011)).

***Cartagena***, 63 A.3d at 302-04 (footnotes and some citations omitted).

After reviewing these and many other similar cases involving limited searches for weapons during routine traffic stops, it is apparent that the primary (but not exclusive[2]) touchtone for determining whether reasonable suspicion exists to justify a limited weapons search is the evasiveness and/or

---

[2] For instance, independent evidence of a defendant's (or other vehicle occupant's) history of possessing weapons, or specific instances of prior criminal conduct, would not only be relevant but likely controlling factors, in any determination of whether a reasonable belief exists that a person is armed and dangerous.

secretive behaviors of the vehicle's occupants. In the present case, no such behavior is established by the record.

There is no testimony by Officer Wolk that Appellant was acting nervously or that he made furtive movements consistent with the secretion of contraband. There was no testimony by the officer suggesting that he was led to believe, through his training and experience, that some particular aspect of Appellant's behavior was consistent with the secretion of a weapon or criminal activity. Officer Wolk merely testified that he could not see Appellant's hand because it was obstructed by the center console. He did not testify that the hand appeared to be in an unnatural position, or that Appellant had moved his hand to that position as the police approached. While this stop did occur in a high crime area, it did not occur at night when additional safety concerns might arise.

Given these facts, we conclude that Officer Wolk did not have a reasonable suspicion that Appellant was armed, dangerous, or otherwise engaged in criminal activity unrelated to the minor traffic violation when he opened Appellant's passenger side door and leaned into the vehicle. Thus, Officer Wolk did not seize the marijuana from plain view, because he neither observed it from a lawful vantage point, nor did he have a lawful right of access to the place from which the contraband was seized. *McCree*, 924 A.2d at 627.

We emphasize that we do not disregard Appellant's motor vehicle code infraction or the fact that the stop occurred in a high crime neighborhood.

However, while Appellant's motor vehicle code infraction was dangerous, there was no evidence that it in any way increased the likelihood that Appellant was armed or engaged in unrelated criminal activity. Turning without signaling, running red lights or stop signs, and all other sorts of motor vehicle violations are inherently dangerous, which is precisely the reason such actions are illegal. However, there is nothing about Appellant's infraction in this case that presents specific articulable facts, or justifies inferences, that bear upon Appellant's dangerousness or whether he was engaged in other criminal activity.[3]

Appellant's mere presence in a high-crime neighborhood, although relevant to our analysis, also does not provide any *particularized* fact or reasonable inference concerning Appellant's dangerousness or potential criminality. There will certainly be cases where some potentially innocuous act is justifiably treated with heightened scrutiny in high-crime areas. For instance, we have held that flight from police in a high crime area gives rise to a reasonable suspicion that criminal activity is afoot. *See In re D.M.*, 781 A.2d 1161, 1162 (Pa. 2001). However, in this case, there is no evasive act analogous to the flight from police at issue in *D.M.* – there is only Officer

---

[3] This is not to say that traffic infractions can never provide such facts or inferences. For instance, running red lights *after* police pursuit has begun, or going the wrong way down a one-way street *in reaction to* police, are examples of how the context in which the infraction occurs is of paramount importance. Such actions constitute evasive behavior, which is always a relevant factor to consider when conducting an analysis under *Long*.

Wolk's inability to see Appellant's hand – a fact which, as discussed above, is likely to occur with some minor variation in virtually every traffic stop. Most importantly, however, there was no evidence of evasiveness, nervousness, or other behavior that suggests additional criminality or potential dangerousness beyond the underlying motor vehicle code violation. Moreover, despite the location, this traffic stop occurred in the middle of the afternoon on a public street.

To hold that Officer Wolk was reasonable in his belief that Appellant was armed, dangerous, or engaged in other criminal activity, would be to permit police to enter vehicles to search for weapons any time a motor vehicle infraction occurs in a high crime neighborhood. No such rule exists to our knowledge, and neither the trial court nor the Commonwealth cite a single case that even suggests the existence of such a rule. Furthermore, neither the trial court nor the Commonwealth cites a case with substantially similar facts in which a search for weapons was condoned.

Accordingly, we conclude that the trial court erred when it denied Appellant's suppression motion. Because Appellant's conviction and judgment of sentence must be reversed as a result of our holding, Appellant's remaining weight and sufficiency of the evidence claims are rendered moot.

Judgment of sentence **reversed**.

Judge Allen joins this memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/2015