J-S74038-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                                 :        PENNSYLVANIA
           Appellee          :
                                   :
              v.                :
                                   :
JOSHUA RAYMOND WATSON,      :
                                 :
           Appellant       :   No. 1479 EDA 2014

Appeal from the Judgment of Sentence April 28, 2014,
Court of Common Pleas, Montgomery County,
Criminal Division at No. CP-46-CR-0002077-2013

BEFORE:  BENDER, P.J.E, DONOHUE and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:             **FILED JUNE 23, 2015**

Appellant, Joshua Raymond Watson ("Watson"), appeals from the judgment of sentence entered on April 28, 2014 by the Court of Common Pleas of Montgomery County, Criminal Division, following his convictions of persons not to possess, use, manufacture, control, sell, or transfer firearms and firearms not to be carried without a license.[1]  Watson's appellate counsel ("Counsel") seeks to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  Upon review, we grant Counsel's petition to withdraw and affirm Watson's judgment of sentence.

The trial court summarized the facts and procedural history of this case as follows:

---

[1]  18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

*Retired Senior Judge assigned to the Superior Court.

The charges arose from events that occurred on February 11, 2013. Around 11:20 p.m. that evening, Officer Daren Swain [("Officer Swain")] was monitoring traffic on Lancaster Avenue, in Lower Merion Township, Montgomery County. After he noticed a silver Nissan travel through a red light, he activated his overhead lights in order to initiate a traffic stop of the vehicle. The vehicle eventually pulled over into a Getty gas station on Lancaster Avenue, which is in Haverford Township. Officer Swain approached the vehicle and became aware that Terrell Watson was in the driver's seat, while [Watson] was in the passenger seat.

Officer Swain detected the odor of burnt marijuana through the driver's side window[,] which was cracked open. He also noticed that Terrell Watson's eyes were a red, glassy color, consistent with someone smoking marijuana. Additionally, Terrell Watson fumbled his wallet while trying to retrieve his driver's license in order to comply with the officer's request. Upon being asked, Terrell Watson indicated that he did not have any marijuana on his person but that he smoked earlier with a female at Rosemont College. Officer Swain, having the suspicion that Terrell Watson could be driving under the influence of a controlled substance, requested backup from another officer.

Officer Jeff Sullivan [("Officer Sullivan")] arrived to help and accordingly approached the passenger side of the vehicle. At that point, Officer Sullivan observed American Eagle 9-millimeter ammunition in the back of the vehicle, which he called to the attention of Officer Swain who eventually began field sobriety-testing Terrell Watson. Officer Sullivan then opened the passenger's door to speak with [Watson] and was hit with a strong odor of marijuana. [Watson] was asked to produce [] identification, which he eventually did after first indicating he did not believe he had one, and nervously patting his pockets. Officer Sullivan asked [Watson] if there were any weapons in the car or on him, and

[Watson] indicated several times that there were not.

Officer Sullivan then requested that [Watson] get out of the vehicle in order for the officer to perform a pat-down search. This prompted [Watson] to exclaim, "I have a gun on my right hip." Officer Sullivan seized the weapon and handcuffed [Watson] to be taken into custody. He then performed a search incident to arrest on [Watson] and recovered a magazine that was loaded for the gun and marijuana that was in the pocket of his pants.

A suppression hearing was held on October 30, 2013, and the court denied the Motion to Suppress the firearm, ammunition magazine, and marijuana. [Watson] then continued to a stipulated bench trial on November 1, 2013. This court found [Watson] guilty of [the above-referenced] violations of the Uniform Firearms Act. Thereafter, he was sentenced on April 28, 2014 to [four to nine years of incarceration], to be served in a State Correctional Institution.

[Watson] did not file any post-sentence motions. On May 12, 2014, he filed a counseled Notice of Appeal with [the] Superior Court. [Watson] subsequently complied with this court's directive that he produce and serve a Concise Statement of Matters Complained of on Appeal within 21 days and in accordance with Pennsylvania Rule of Appellate Procedure 1925(b).

Trial Court Opinion, 7/18/14, at 2-4 (record citations omitted).

On appeal, Counsel has filed a petition to withdraw and brief pursuant to **Anders** and **Santiago**. There are particular mandates that counsel seeking to withdraw pursuant to **Anders** and **Santiago** must follow. These mandates and the significant protection they provide to an appellant arise

because a criminal defendant has a constitutional right to a direct appeal and to counsel on that appeal. ***Commonwealth v. Woods***, 939 A.2d 896, 898 (Pa. Super. 2007). We have summarized these requirements as follows:

> Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders,*** this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an advocate's brief on Appellant's behalf).

***Id.*** (citations omitted).

Moreover, there are requirements as to the precise contents of an ***Anders*** brief:

> [T]he Anders brief that accompanies court-appointed counsel's petition to withdraw … must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons

> for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. When faced with a petition to withdraw and an *Anders* brief, we may not review the merits of the underlying issues without first deciding whether counsel has properly requested permission to withdraw. *Commonwealth v. Wimbush*, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). If counsel has met these obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 354 n.5.

We conclude that Counsel has complied with the requirements outlined above. Counsel has filed a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. Petition to Withdraw as Counsel, 8/29/14, ¶ 8. Counsel has filed a brief setting forth one issue that he believes might arguably support an appeal. *See Anders* Brief at 4, 16-27. In conformance with *Santiago*, Counsel's brief includes summaries of the facts and procedural history of the case and discusses the issue he believes might support Watson's appeal. *See id.* at 5-27. Counsel's brief sets forth his conclusion that the appeal is frivolous and includes citation to relevant authority. *See id.* at 16-27. Finally, Counsel has attached to his petition the letter that he sent to Watson, which enclosed

Counsel's petition and **Anders** brief and advised Watson of his right to proceed pro se or with private counsel and to raise any additional issues that he deems worthy of this Court's consideration.[2] Petition to Withdraw as Counsel, 8/29/14, at 5-6. Accordingly, we turn our attention to the issue raised by Counsel in his **Anders** brief.

Counsel raises one issue as arguably supporting an appeal: "[d]id the trial court commit reversible error when it denied [Watson]'s motion to suppress physical and testimonial evidence obtained by police at the time of the traffic stop?" **Anders** Brief at 4. Counsel presents three arguments in support of this issue.

When reviewing a challenge to a trial court's denial of a suppression motion, our standard of review is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error,

---

[2] Watson did not file a pro se response raising any additional issues for our consideration.

the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013).

The first argument that Counsel presents is that the trial court lacked reasonable suspicion to stop the silver Nissan because the traffic signal was not red when the vehicle traveled through the intersection and therefore, the vehicle was not in violation of section 3112(a)(3)(i) of the Motor Vehicle Code. *Anders* Brief at 20. Section 3112(a)(3)(i) of the motor vehicle code provides:

> (i) Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, or if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown except as provided in subparagraph (ii).

75 Pa.C.S.A. § 3112(a)(3)(i).

Additionally, probable cause to stop a motor vehicle exists "where the facts and circumstances within the officer's knowledge are sufficient to

warrant a person of reasonable caution in the belief that an offense has been or is being committed. We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." ***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013) (quotations and citation omitted).

We agree with Counsel that this issue is frivolous. Officer Swain's testimony established sufficient probable cause to stop the silver Nissan for a violation of section 3112(a)(3)(i). Officer Swain testified that he observed the silver Nissan travel through a solid red signal. N.T., 10/30/13, at 9. Officer Swain explained that the light facing him was green, and the light perpendicular to that, which the silver Nissan travelled through, was red. ***Id.*** at 10. The trial court found Officer Swain's testimony credible. Trial Court Opinion, 7/18/14, at 5. Therefore, the record supports the trial court's determination that Officer Swain's stop of the silver Nissan was lawful.

The second argument that Counsel presents is that Officer Swain violated the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S.A. §§ 8951–8954, when he travelled outside of his primary jurisdiction of Lower Merion Township to stop the silver Nissan in Haverford Township. ***Anders*** Brief at 21-23. Section 8953 of the MPJA governs statewide municipal police jurisdiction and provides in pertinent part:

> **(a) General rule.--**Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary

jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

\* \* \*

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S.A. § 8953(a)(2). Importantly, our Supreme Court has held that "'hot pursuit' and 'fresh pursuit' require some sort of investigation and tracking of the perpetrator and that [the] pursuit be immediate, continuous and uninterrupted." *Commonwealth v. Peters*, 965 A.2d 222, 225 (Pa. 2009).

We likewise agree with Counsel that this claim is frivolous. Here, Officer Swain testified that he observed the silver Nissan run a red light in his primary jurisdiction of Lower Merion Township. N.T., 10/30/13, at 9-10. Officer Swain further testified that he immediately began to follow the silver Nissan, that he continuously tracked the vehicle until he was able to catch up with it, at which point he activated his emergency lights and initiated a traffic stop. *See id.* at 10. Officer Swain stated that he ultimately stopped the silver Nissan outside of his primary jurisdiction in Haverford Township.

*Id.* Accordingly, the record supports the trial court's determination that Officer Swain's stop of the silver Nissan was lawful as his actions were in conformance with section 8953(a)(2). ***See Commonwealth v. McGrady***, 685 A.2d 1008, 1011 (Pa. Super. 1996) (holding that section 8953(a)(2) permitted police officer to continue pursuit of appellant outside the officer's primary jurisdiction in order to issue a citation for a motor vehicle code violation committed in the officer's primary jurisdiction).

The third argument that Counsel presents is that the search and seizure of Watson by the police following the vehicle stop was illegal because the police had no reason to suspect that Watson was involved in any criminal activity. ***Anders*** Brief at 23-27. The law regarding investigatory stops and frisks is well-settled:

> In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. [***Terry v. Ohio***, 392 U.S. 1, 30 (1968)]. In order to determine whether the police had reasonable suspicion, the totality of the circumstances – the whole picture – must be considered. ***United States v. Cortez***, 449 U.S. 411, 417[] (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." ***Id.*** at 417–418[]. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. ***Commonwealth v. Arch***, [] 654 A.2d 1141, 1144 ([Pa. Super.] 1995). If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government

activity. ***Commonwealth v. Gibson***, [] 638 A.2d 203, 206–207 ([Pa.] 1994).

The ***Terry*** totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. ***See Commonwealth v. Mesa***, [] 683 A.2d 643, 646 ([Pa. Super.] 1996). Moreover, the principles of ***Terry*** apply to all occupants of the stopped vehicle, not just the driver. ***See id.*** (applying the principles of ***Terry*** to determine whether the police were permitted to conduct a pat down search of the passenger in a vehicle that was stopped pursuant to a motor vehicle violation). Indeed, as we have observed, "roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." ***In re O.J.***, 958 A.2d 561, 564 (Pa. Super. 2008) (en banc)[.]

***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011).

We agree with Counsel that this claim is frivolous. The evidence supports the trial court's finding that Officer Sullivan had reasonable suspicion to believe that Watson may have been in possession of a weapon. Officer Sullivan testified that the stop occurred late at night, that he observed ammunition in plain view in the back seat of the silver Nissan, and that Watson appeared anxious and nervously patted his pockets when asked to produce identification. N.T., 10/30/13, at 48-50, 55. Watson, just prior to the pat down, after initially stating he had no weapons, exclaimed to Officer Sullivan that he had a gun on his right hip. ***Id.*** at 51-52. While Watson asserts that the trial court should have suppressed this statement, it was nonetheless admissible as evidence against him. Our Court has held

that "volunteered or spontaneous utterances by an individual are admissible without the administration of **Miranda** warnings." **Commonwealth v. Garvin**, 50 A.3d 694, 698 (Pa. Super. 2012). Therefore, the record supports the trial court's conclusion that Officer Sullivan articulated specific facts, which, under the totality of the circumstances, led him to reasonably infer that Watson was armed, and therefore threatening his safety and the safety of others.

Finally, after conducting our own independent review of the record, we conclude that there are no issues of merit and agree with Counsel's assessment that Watson's direct appeal is frivolous. Accordingly, we find this appeal wholly frivolous and permit Counsel to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Bender, P.J.E. joins the Memorandum.

Strassburger, J. files a Concurring Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015

- 12 -