667 A.2d 1158

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Timothy A. LATEEF, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 10, 1995.

Filed Nov. 29, 1995.

John J. Dean, Public Defender, Pittsburgh, for appellant.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CIRILLO, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on August 22, 1994, following appellant's conviction on charges of possession with intent to deliver a controlled substance and possession of a controlled substance. Appellant was sentenced to three to ten years imprisonment and a $15,000 fine.[1] Appellant presents this court with the following two issues: Were police justified in frisking appellant, and, if so, did police exceed the scope of a *Terry*[2] search by reaching into appellant's pockets in the absence of testimony that the officer believed the bulge felt like a weapon or contraband.

Upon review, we find that the officer did exceed the scope of the permissible pat-down search since the officer was unable to recall whether the bulge felt like a weapon or contraband. Accordingly, we reverse the judgment of sentence and remand for a new trial consistent with the provisions herein.

The facts of this case are as follows: On June 27, 1992, at approximately 9:10 p.m., a confidential informant contacted Detective Kenneth Cole of the Monroeville Police Department and stated that within the past three to five minutes he saw a

---

1. We note that the Pennsylvania Commission on Sentencing Guideline Sentence Form signed by Judge Dauer states appellant's sentence as three (3) to six (6) months imprisonment and a $15,000 fine.

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

grey Volkswagen GTI, bearing Pennsylvania registration RAN677, occupied by three individuals trafficking in cocaine. The informant told Detective Cole that he personally witnessed these individuals possessing crack cocaine in a house in Turtle Creek. He described the driver of the vehicle as a black male with a moustache, weighing 160–165 pounds and approximately 30 years of age. He described the rear passenger as a black male, about six-foot, wearing a dirty white/grey hooded sweatshirt. Appellant was positioned in the right front passenger seat. The informant claimed that the occupants of this vehicle possessed approximately one ounce of crack cocaine.

Detective Cole had personal knowledge of the informant's reliability. The informant had provided accurate information directly to Detective Cole on two prior occasions. Further, Detective Rickie Bauers from the Shaler Police Department had previously told Detective Cole that the confidential informant had furnished information to Allegheny County narcotic detectives on at least 20 cases which resulted in successful prosecutions.

Detective Cole was off duty when the informant called, so he relayed the information to Detective Polnar of the Monroeville Police Department. Detective Polnar proceeded to broadcast the information on the police radio channels. At 9:30 p.m., Officer David Brown radioed that he was following a vehicle matching the description. Officer Brown stopped the vehicle, and moments later Detective Polnar arrived. At that time, Officer Brown and another officer had their weapons drawn with appellant and the two other suspects secured in the vehicle.

Pat-down searches of the driver of the vehicle and the rear passenger revealed no weapons or contraband. Detective Polnar performed a pat-down search of appellant and felt a bulge in his pocket. At the suppression hearing, he testified that "for his safety" he searched appellant, and he retrieved $70.00 in assorted currency and a small plastic bag containing a white crystalline substance from appellant's left front pocket, $244.00 in assorted currency from appellant's right front

pocket, and $1,110.00 in assorted currency from his right rear pocket.

Appellant was then given his *Miranda* warnings and interviewed by police. During the interview, an additional bag containing a white crystalline substance was seized from the front of appellant's waistband as well as a pager watch. The Allegheny County Crime Lab tested the bags of white crystalline substance found on appellant. Both tested positive for the presence of cocaine base.

When reviewing the denial of a motion to suppress, this court must:

> determine whether the factual findings of the [suppression] court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

*Commonwealth v. Ariondo*, 397 Pa.Super. 364, 366–369, 580 A.2d 341, 342–343 (1990), quoting *Commonwealth v. Schneider*, 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989).

Appellant does not dispute that the informant gave sufficiently reliable information to justify the stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, he contends that the police lacked reasonable suspicion that he was armed and dangerous to justify a pat-down search. If the police did have sufficient reasonable suspicion to justify the frisk, appellant claims that the scope was unlawfully exceeded.

First, we will address whether police had sufficient reasonable suspicion to justify a *Terry* frisk. In *Terry*, the United States Supreme Court granted authority to police officers to pat down or frisk a suspect for weapons based only upon the reasonable belief that criminal activity is afoot, and

that the suspect may be armed and dangerous. *Common-wealth v. Canning*, 402 Pa.Super. 438, 587 A.2d 330, 331 (1991) (citing *Terry, supra* at 27, 88 S.Ct. at 1883). The officer must be able to articulate specific facts which would justify the belief that the suspect may be armed and dangerous. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

Upon review, we find that the trial court was correct in concluding that reasonable suspicion existed to warrant a *Terry* stop and search. In this case, a reliable informant contacted Detective Cole within five minutes of personally seeing narcotics. He stated the number of occupants within the vehicle, described two of the occupants and gave the make and license plate number of the vehicle wherein the cocaine was transported. He informed the officer of the nature and amount of narcotics involved. Police observed the vehicle and its occupants in the predicted area within a matter of minutes.

Given that the suspects allegedly possessed narcotics, officers were correct in anticipating the possibility that the suspects might be armed and dangerous. In *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991), this court acknowledged the possible danger and violence inherent in the possession and distribution of narcotics. Thus, having been informed that the suspects possessed narcotics, the officers had reasonable suspicion that they might be armed and dangerous, warranting a *Terry* stop and subsequent pat-down for their protection.[3]

3. The Commonwealth argues in its brief that based on the informant's tip, there was probable cause to arrest appellant at the time they searched him. Thus, a valid search incident to a lawful arrest ensued. Probable cause necessary for a warrantless arrest is established when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to conclude that the suspect has or is committing a crime. *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991). In the present case, police stopped a vehicle pursuant to a confidential tip which described two of the three occupants of the suspect vehicle. The undescribed occupant was appellant. Therefore, it can not be asserted that police had probable cause to arrest appellant when they had no information regarding him specifically. Hence, the Commonwealth's

646

■ We will now analyze whether the officers exceeded the lawful scope of the *Terry* frisk. The scope of such a frisk is limited "to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Canning, supra* 587 A.2d at 331 (citing *Terry, supra* at 29, 88 S.Ct. at 1884). Further, recent caselaw has created what has been termed the "plain feel" exception to the warrant requirement. The United States Supreme Court held in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons, if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." *In Interest of S.D.,* 429 Pa.Super. 576, 633 A.2d 172, 175 (1993) (quoting *Dickerson, supra,* 508 U.S. at 375–76, 113 S.Ct. at 2137).

Since *Dickerson,* this court has had two opportunities to define the applicability of the "plain feel" exception. In *Commonwealth v. Johnson,* 429 Pa.Super. 158, 631 A.2d 1335 (1993), the "plain feel" exception applied because the "contour or mass" of the object felt during a valid *Terry* frisk made it immediately apparent to the officer that it was contraband. In *Interest of S.D., supra,* this court found no evidence to validate the police intrusion into the suspect's pocket to retrieve vials of cocaine. *Id.,* 633 A.2d at 176. The court was not convinced that the identity of the item seized was readily apparent to the officer as a weapon or contraband. The officer testified that he "felt a bulge in [the suspect's] right pants pocket", but never indicated what he thought the bulge was. *Id.* The court concluded that without such testimony, they could not conclude that the officer thought the bulge was either a weapon or contraband and thus, the evidence was suppressed. *Id.*

argument, which was not even advanced until this appeal, is without merit.

Applying *Terry* and *Dickerson* to the case before this court, we find that the police exceeded their lawful authority by reaching into appellant's pockets during the *Terry* frisk. The testimony from the officer performing the pat-down was as follows:

Q: Now, when you say you did a pat-down of Mr. Lateef, you felt a bulge, what kind of bulge did you feel?

A: I don't recall.

Q: You don't recall? When you reached into the pocket what did you find?

A: A wad of money.

Q: Okay. Was the money rolled up in a big ball or folded over in a nice, neat little stack?

A: I don't recall.

Q: What did the bulge feel like to you? Did it feel like a gun, feel sharp and pointy like a knife?

A: I don't recall what it felt like at that point, no.

Q: It felt like money rolled up?

A: I don't recall.

Q: How about when you checked the other pockets where you found the—you say you found the narcotics in one pocket, how did that feel?

A: I'm trying to go back in my mind. I just don't recall what they felt like at that time.

Q: Was it packaged in a plastic bag?

A: I believe it was.

Q: When you patted the pocket down could you hear the bag crunch or squish or do anything?

A: I don't recall whether I could or not.

Q: About how big was the bulge? This size, this size, this size, the size of a golf ball, softball, peanut?

A: I don't recall.

Q: Didn't feel like a weapon, though, did it?

A: I don't recall, sir, I can't say.

N.T. 20–21.

As seen above, the officer could not recall what he thought he felt in appellant's pockets. In fact, he could not recall any facts concerning the frisk of appellant or his reasons for removing the items in question from appellant's pockets. The facts of the present case are nearly identical to those in *In Interest of S.D., supra.* Both cases involve a *Terry* frisk where the officer retrieved evidence from the suspects pocket yet was unable to give testimony at trial regarding what the object felt like. In light of the foregoing testimony, or lack thereof, this court finds that the officer's search of appellant's pockets was not justified by *Terry* as a seizure of a weapon, nor by *Dickerson* as seizure of cognizable contraband. We must conclude that the officer exceeded the legal boundaries of a permissible pat-down absent testimony that the officer felt a weapon or contraband in appellant's pockets. Consequently, due to the illegal search, the fruits that arose therefrom, the currency and cocaine, must be suppressed. *In Interest of S.D., supra; Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265, 1274 (1991).

Accordingly, we reverse the judgment of sentence and remand for a new trial consistent with this opinion.