678 A.2d 798

COMMONWEALTH of Pennsylvania

v.

Martinez JACKSON, Appellant.

Superior Court of Pennsylvania.

Argued April 30, 1996.

Filed June 14, 1996.

130

L. Roy Zipris, Philadelphia, for appellant.

Karen A. Braucheau, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, DEL SOLE, J., and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus.

Martinez Jackson appeals from the order entered by the Philadelphia Common Pleas Motions Court denying his petition for *certiorari.* We affirm.

On December 20, 1994, at approximately 11:20 p.m., Police Officer Clyde Jones received a report over his police radio regarding a robbery in progress at Germantown Avenue and Duval Street in Philadelphia. The report described the alleged perpetrator as an armed male wearing a black baseball hat and black jacket. Officer Jones drove in the direction of the crime scene five minutes after receiving the report, where, approximately two and one-half blocks from the scene of the robbery, he observed Martinez Jackson, wearing a dark-colored baseball cap and black jacket, walking along the street. Jones approached Jackson, asked him to stop walking, and then inquired as from where he was coming. Jackson responded that he had just left his girlfriend's house. Officer Jones then frisked Jackson, recovering a .45 caliber automatic revolver which was fully loaded and operable. Officer Jones arrested Jackson.

Prior to trial, Jackson made an oral motion to suppress the gun recovered from the officer's frisk. The motion was heard in Philadelphia Municipal Court.[1] Jackson claimed that the physical evidence should be suppressed since the officer unlawfully searched him without reasonable cause. After the municipal court denied this motion, the Honorable Francis P. Cosgrove, of the Philadelphia Common Pleas Motions Court, convicted Jackson of carrying a firearm without a license [2] and carrying a firearm on public streets.[3] Jackson was sentenced to a one-year term of probation.

Jackson filed a writ of *certiorari* to the motions court, seeking to appeal the order denying his motion to suppress. This writ was also denied. Jackson now appeals and presents

1. *See* Pa.R.Crim.P. 6005(a) (governing procedure in the Philadelphia Municipal Court; specifically permits the making of an oral motion for the suppression of evidence). *See also Commonwealth v. Rosario*, 538 Pa. 400, 648 A.2d 1172 (1994) (citation omitted) (as a means to promote the prompt and expeditious disposal of cases in Philadelphia County, oral suppression motions made in the municipal courts of Philadelphia County have been expressly approved by our supreme court); *Commonwealth v. Lewis*, 394 Pa.Super. 403, 576 A.2d 63 (1990) (same).

2. 18 Pa.C.S. § 6106.

3. 18 Pa.C.S. § 6108.

the following issue for our review: Did the Suppression Court err in denying appellant's Motion to Suppress when the quality and quantity of the information in the police officer's possession at the time he frisked appellant was insufficiently specific to establish reasonable suspicion under the United States and Fennsylvania Constitutions?

When we review an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Donahue*, 428 Pa.Super. 259, 278, 630 A.2d 1238, 1247 (1993), *allocatur denied in*, 538 Pa. 612, 645 A.2d 1316 (1994) (citations omitted). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

Jackson argues that the description of the robbery suspect, given to Officer Jones over the police radio, was too general and superficial to provide the reasonable suspicion justifying a *Terry* stop. Specifically, Jackson claims that since the description did not include any information regarding the alleged suspect's race, age, height, weight or facial features, "any male in Philadelphia" could fit this description, and, therefore, without particularized suspicion, the fruits of the unlawful stop by the officer should have been suppressed.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a police officer may approach or briefly detain a citizen, without probable cause, for investigatory purposes. The officer need not personally observe suspicious conduct leading to the reasonable belief needed for a *Terry* stop; rather, he may rely upon information received over the police radio to justify the stop. *Commonwealth v. Arch*, 439 Pa.Super. 606, 654 A.2d 1141 (1995). "Reasonable suspicion, like probable cause, is

dependent upon both the content of information possessed by police and its degree of reliability." *Commonwealth v. Knotts,* 444 Pa.Super. 60, 663 A.2d 216 (1995) (citations omitted). The officer must also be able to point to specific and articulable facts "which in conjunction with rational inferences deriving therefrom" warrant the initial stop. *Arch,* 439 Pa.Super. at 612, 654 A.2d at 1144–45 (citations omitted).

A major factor in justifying a *Terry* stop, when the suspicious conduct has not been personally observed by the officer, is the specificity of the description of the suspect. *Commonwealth v. Jackson,* 359 Pa.Super. 433, 519 A.2d 427 (1986). "[T]he factors that must be considered in justifying an investigatory stop and subsequent frisk include the specificity of the description of the suspect in conjunction with how well the suspect fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed." *Id.,* 359 Pa.Super. at 438, 519 A.2d at 430 (citation omitted).

Based solely upon the police report, we cannot find that Officer Jones had "specific and articulable facts" to reasonably conclude that criminal activity was afoot when he initially stopped Jackson. Officer Jones did not admit to having observed Jackson exhibiting any unusual or suspicious conduct when he passed him in his patrol car near the crime scene; the police report gave a meager physical description of the alleged perpetrator wearing two common articles of clothing; Jackson unreluctantly approached Officer Jones's patrol car when he was summoned by the officer; and, Jackson gave an innocuous response to the officer's inquiry regarding his whereabouts immediately preceding the "stop." *See also Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969) (police officers, seeking suspect described by citizens as a "mustached Negro in his thirties of a certain height and weight wearing a brown coat," did not have right to stop and search the defendant who only fit the race and age portion of the description); *Arch,* 439 Pa.Super. 606, 654 A.2d 1141 (1995) (no reasonable suspicion existed for an officer to arrest

black male, exhibiting no suspicious behavior, walking around motel parking lot, in which a white Toyota was parked, when police had a report that a white Toyota registered in Virginia was being used by three black males wanted in an armed assault incident; report contained no physical description of the perpetrators other than their race and gender).

Supplementing the above information, however, with the other integral factors enumerated in *Jackson* creates the requisite "specific and articulable facts" that justify Officer Jones's stop of appellant. First, Jackson exactly fit the given, yet meager, description from the police report. Second, Jackson was both spatially and temporally proximate to the scene of the crime when stopped by Officer Jones. Third, the nature of the crime was a serious felony. Lastly, the confrontation between Jackson and Officer Jones was late in the evening in an area even Jackson claims was particularly dangerous. *See Jackson, supra* (although the vague description of a suspect from a police radio report was insufficient, alone, to justify officer's stop and frisk, when additional facts and circumstances were viewed, court found that the stop and frisk was justified).

In addition, the subsequent "frisk" or "pat-down" of Jackson, which led to the seizure of the revolver, was equally proper. For a precautionary seizure, which follows a legal *Terry* stop, "there must first exist on the part of the police a reasonable belief that criminal activity is afoot and that the seized person is armed and dangerous." *Hicks*, 434 Pa. at 160, 253 A.2d at 278. *See Commonwealth v. Lateef*, 446 Pa.Super. 640, 667 A.2d 1158 (1995) (officers had reasonable suspicion, warranting a stop and subsequent pat-down of the defendant for their protection, given that the defendant allegedly possessed narcotics; officers were justified in anticipating the possibility that defendant might be armed and dangerous). In the present case, Officer Jones was informed, by a reliable police report, that the perpetrator of the robbery was armed. Given this information and the fact that the crime allegedly committed was a felony, the officers were correct in anticipating the possibility that any suspect might be armed and

136

dangerous; thus, justifying the pat-down of the appellant. *Lateef, supra.*

Order affirmed.