J-S65006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAISON JONES | |
| Appellant | No. 519 WDA 2015 |

Appeal from the Judgment of Sentence January 28, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000442-2014

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 24, 2016**

Jaison Jones files this appeal *nunc pro tunc* from the judgment of sentence entered on January 28, 2015 in the Court of Common Pleas of Allegheny County. After careful review, we affirm.

The trial court made the following factual findings:

> I find that Officer Desaro was employed as a City of Pittsburgh police officer on patrol and on duty at approximately 2:30 a.m. on December 21, 2013 near the 6600 block of Frankstown Avenue near Finley Street in the City of Pittsburgh.
>
> I find also that earlier that morning, a specific time unknown but within a relatively short time based on the testimony prior to that 2:30 encounter, Officer Desaro received a be-on-the-look-out-call, a BOLO call if you will, regarding a red Mercedes and a red

---

[*] Retired Senior Judge assigned to the Superior Court.

Dodge automobile that [were] involved where one of the occupants of the vehicle was apparently in possession of a firearm involved in an incident on the Northside area of the City of Pittsburgh. A description was given as a red Mercedes and a red Dodge. The operator of the Mercedes was described as a black male, heavy set, attired in a t-shirt.

I also find that Officer Desaro at approximately the time of the stop which was around 2:30 a.m., the 21st of December, observed a red Mercedes in the area of Finley Street and the 6600 block of Frankstown which I believe is the Serentiy or which [is] now known as the Serenity Club. He notices a red Mercedes and based upon the information he received earlier on the BOLO he followed it, did not activate his lights or effectuate any type of a stop. The vehicle apparently pulled over on its own volition on Finley Street. I also find that as Officer Desaro approached the vehicle, the driver who emerged from the red Mercedes matched the description that was given earlier that night in the BOLO with the information that the operator wore a white t-shirt, he was a heavy set black male and that a firearm was involved in whatever type of incident it was or which occurred earlier that evening on the Northside which caused the Officer to have apprehension about his own safety as he approached the vehicle. For his safety, as Officer Desaro testified, he drew his weapon and he directed the driver of the vehicle after he had gotten out voluntarily to the ground where he was secured and effectively restrained. Officer Desaro and Officer Nino who subsequently had arrived at the scene and approached the red Mercedes after securing the defendant and observed a handgun on the passenger seat of the vehicle in plain view which was subsequently recovered and found to be fully loaded.

The information again in the BOLO was corroborated by Officer David Head who heard the BOLO earlier in the evening while engaged in a private off-duty assignment with the City at a club in the Strip District . . . . in private duty capacity providing

security at the Travelers Club on Hamilton Avenue. It was some time shortly after 2 o'clock in the morning when Officer Head placed another alert on the police radio that he observed what may be the vehicle described earlier on the Northside in the area of the Hamilton Avenue location at 2500 Hamilton Avenue. It matched the description of a heavy set black male, white t-shirt, red Mercedes and he broadcast that information.

N.T. Suppression Hearing, 7/17/14, at 51-54.

Jones was charged with one count each of person not to possess a firearm, carrying a firearm without a license, and the summary offense of driving while operating a suspended license.[1] On April 30, 2014, Jones filed a motion to suppress physical evidence. The trial court denied the motion after a hearing on July 17, 2014. Jones proceeded to a non-jury trial on November 21, 2014, where the trial court found him guilty on each count.[2] On January 28, 2015, the trial court sentenced Jones to an aggregate sentence of not less than two years to not more than four years' incarceration.

Jones failed to file post-sentence motions or a notice of appeal. Jones then filed a petition for allowance of appeal *nunc pro tunc* on March 11, 2015. The Honorable Kevin G. Sasinoski granted Jones' petition in an order filed on March 23, 2015. Jones subsequently filed a notice of appeal and a

---

[1] 18 Pa.C.S. § 6105(a)(1); 18 Pa.C.S. § 6106(a)(1); and 75 Pa.C.S. § 1543, respectively.

[2] Jones waived his right to a jury trial and proceeded with a bench trial in front of the Honorable Kevin G. Sasinoski. **See** Docket Entry No. 37.

concise statement of errors. Judge Sasinoski filed a Pa.R.A.P 1925(a) opinion on April 1, 2016.

On appeal, Jones challenges the trial court's denial of his pretrial suppression motion, and asks this Court to review the following issues, which we have simplified for brevity:

> 1. Did the trial court err in denying Jones' motion to suppress the firearm recovered from the passenger seat of the red Mercedes because recovery of the firearm was a result of Jones' unlawful detention, and did Jones' detention rise to the level of an unlawful arrest?
>
> 2. Did the trial court err in denying Jones' motion to suppress the firearm recovered from the passenger seat of the red Mercedes because the police did not have a valid warrant to search the vehicle, and the search did not fall into the plain view exception to the search warrant requirement?
>
> 3. Did the trial court improperly admit into evidence Jones' statements made to police regarding the firearm because the statements were the direct result of an illegal arrest?

*See generally* Appellant's Brief, at 7.

Initially, we note our standard of review of the denial of a suppression motion. When reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Jackson*, 678 A.2d 798, 800 (Pa. Super. 1996). In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for

the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* Additionally, it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Commonwealth v. Fitzpatrick*, 666 A.2d 323, 325 (Pa. Super. 1996). If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

To begin, we conclude that the factual findings of the trial court are supported by the evidence of record. Therefore, our review is limited to determining whether the trial court's legal conclusions were made in error. *See Jackson*, *supra*.

Jones argues that when Officer Desaro detained him with handcuffs, his detention amounted to an unlawful arrest because "he was ordered to the ground by police who had their guns drawn. He was immediately handcuffed. He did not believe he was free to leave nor was he objectively free to leave." Appellant's Brief, at 16. On the other hand, the Commonwealth argues that Jones was subject to an investigative detention to allow Officer Desaro to obtain more information. *See Commonwealth v. Rosas*, 875 A.2d. 341, 347 (Pa. Super. 2005) (explaining that "an investigative detention, which must be supported by reasonable suspicion, subjects a person to a stop and period of detention in order for the law enforcement officer to obtain more information").

> We have held consistently that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, **Terry v. Ohio** and its progeny recognize that the essence of good police work is for the police to adopt an intermediate response where they observe a suspect engaging in unusual and suspicious behavior. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be reasonable in light of facts known to the officer at the time.

**Rosas**, 875 A.2d at 347 (citing **Commonwealth v. Bryant**, 866 A.2d 1143, 1146 (Pa. Super. 2005)).

> Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

**Id**. at 347 (citing **Commonwealth. v. Zhahir**, 751 A.2d 1153, 1156-57 (Pa. 2000)).

> Since the sole justification for a *Terry* search is the protection of the police and others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Thus, the purpose of this limited search is

not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.

*Commonwealth v. Guillespie*, 745 A.2d 654, 657-58 (Pa. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 26 (1968)).

We find that the totality of the circumstances supported Officer Desaro's brief detention of Jones, and that this detention did not rise to the level of an unlawful arrest.

Officer Desaro testified that

[a]s I got out of the patrol vehicle, I [drew] my firearm on [Jones] knowing that this car possibly had a firearm. I drew my firearm on him and told him to turn around and to get on the ground, which he complied, at which time I handcuffed him and detained him to figure out what was going on.

N.T. Suppression Hearing, 7/17/14, at 29-30.

The trial court was satisfied that Officer Desaro "briefly detained [Jones] for the officers' safety." Trial Court Opinion, 4/1/16, at 5. We agree. Although Jones admits that handcuffs alone are not dispositive of whether an unlawful arrest has occurred, Jones argues that "ordering [him] to the ground, added to the fact that police had their guns drawn, added to the fact that they immediately handcuffed him, transformed the encounter into an arrest." Appellant's Brief, at 16. Based on the facts and circumstances of this case, however, it was reasonable that Officer Desaro was concerned about his safety, the safety of his fellow officers, and the

presence of a firearm. Almost immediately after Jones was detained, a firearm was found in plain view on the passenger seat of Jones' red Mercedes.

Additionally, we are satisfied that the BOLO transmission provided Officer Desaro with reasonable suspicion to believe that criminal activity may have been afoot. We do note, however, that there is a discrepancy between the 9-1-1 operator's comments and testimony regarding the BOLO transmission. Specifically, the 9-1-1 operator's comments about the anonymous tip indicated that "two males pulled up in a red Mercedes and a red Dodge Charger. The male that was in the Mercedes was a black male between 29 to 35 years old with a white t-shirt, heavy set and got out of the car and *was carrying a gun*."[3] N.T. Suppression Hearing, 7/17/14, at 14 (emphasis added). Officer Head testified, however, that the BOLO transmission gave "a description of two vehicles involving guns and someone *waving a gun outside a Mercedes chasing a Dodge Charger*." *Id.* at 7 (emphasis added).[4] Officer Head further explained on cross-examination

---

[3] The 9-1-1 transcript, marked as the Commonwealth's Exhibit No. 1, was entered into evidence. *See* N.T. Suppression Hearing, 7/17/14, at 20. The 9-1-1 operator's comments also noted "the male was out yelling for someone but caller can't tell who." *Id.* at 16.

[4] Officer Head clarified that the BOLO transmission described the Mercedes as ". . . a red Mercedes C 300." *Id.* at 18.

that the comments in the 9-1-1 report were not necessarily "what came over the air." *Id.* at 18.

The trial court credited Officer Head's testimony regarding the contents of the BOLO. Trial Court Opinion, 4/1/16, at 3. Based on the content of the BOLO transmission, Officer Head's radio transmission about a red Mercedes driving in his area with a driver matching Jones' description, and Officer Desaro's independent observation of the red Mercedes shortly after hearing Officer Head's radio transmission, Officer Desaro had the reasonable suspicion necessary to conduct a brief investigatory stop of Jones.

Jones directs this Court's attention to *Commonwealth v. Jackson*, which held that an anonymous tip containing information about a man wearing a green jacket and carrying a gun was insufficient to justify a *Terry* stop. *Commonwealth v. Jackson*, 698 A.2d 571, 576 (Pa. 1997). In *Jackson*, a Philadelphia officer received a police radio report of a man wearing a green jacket and carrying a gun at a specific location. Approximately two minutes after the report was broadcast, an officer responded to the specific location and searched the appellant, who was wearing a green jacket, for weapons. During his search of appellant, the officer found only a small key box containing fourteen packets of cocaine. *Id.* at 572.

*Jackson* is distinguishable from the case before us, however, because Officer Desaro verified the anonymous tip when he observed a loaded gun, in plain view, on the passenger seat of the red Mercedes. Additionally, Officer Desaro relied on a BOLO transmission that indicated criminal activity may have been afoot. In light of the facts available to Officer Desaro at the time, he was justified in briefly detaining Jones because he had reason to believe that Jones may have been involved in a criminal incident with a red Dodge Charger and armed with a firearm. *See Guillespie*, *supra*. We conclude that, based on Officer Head's testimony about the information transmitted in the BOLO message and Officer Desaro's purpose in conducting the investigatory detention and pat-down, the trial court did not err in concluding that Officer Desaro had the reasonable suspicion to conduct a brief investigatory detention.

We next turn our attention to whether Officer Desaro and Officer Nino unlawfully seized the firearm from Jones' vehicle.

> Our Supreme Court has expressly recognized that incriminating objects plainly viewable [in the] interior of a vehicle are in plain view and, therefore, subject to seizure without a warrant. This doctrine rests on the principle that an individual cannot have a reasonable expectation of privacy in an object that is in plain view. In determining whether the incriminating nature of an object [is] immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause.

*Commonwealth v. Turner*, 982 A.2d. 90, 92 (Pa. Super. 2009) (internal citations omitted).

We agree with the trial court's conclusion that the recovery of the gun falls within the plain view exception to the search warrant requirement. It is clear from the testimony of Officer Desaro and Officer Nino that both officers observed the firearm sitting, in plain view, on the passenger seat of the red Mercedes. Officer Desaro testified that "[t]here were rounds in the magazine," and that he believed "there was one in the chamber." N.T. Suppression Hearing, 7/17/14, at 30. Likewise, Officer Nino testified, "I walked up after [Jones] was in cuffs, me and Officer Desaro walked up to the passenger side and there was a firearm laying on the passenger seat." *Id*. at 36.

Although Jones admits that the gun may have been in plain view, Jones argues that the plain view exception to the search warrant requirement does not apply because "the gun was not contraband." Appellant's Brief, at 49. Although it is undisputed that individuals under certain circumstances can legally own firearms, the facts of this case, including both the content of the BOLO transmission and Officer Desaro's independent observation of Jones and the red Mercedes, provided Officer Desaro with probable cause to believe that the firearm was involved in criminal activity. Therefore, we conclude that the trial court did not err in denying Jones' suppression motion based on the trial court's factual findings and the legal conclusions drawn therefrom. *Fitzpatrick*, *supra*.

Finally, Jones argues that the trial court erred when it failed to suppress Jones' conflicting statements made to police about the firearm because the statements followed an unlawful arrest and were involuntary. Appellant's Brief, at 49. As noted above, we have concluded that the brief detention of Jones did not rise to the level of an unlawful arrest. Furthermore, Jones failed to raise a timely objection to the admission of his statements at the suppression hearing, at trial, or in a post-trial motion. Therefore, any claim that Jones may have had regarding the admission of those statements has been waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Cooper*, 710 A.2d 76, 81 (Pa. Super. 1998).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2016